(C. D. 527)

INTERNATIONAL MARBLE & GRANITE CO. *v.* UNITED STATES

## United States Customs Court, First Division

(Decided September 3, 1941)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Marcus Higginbotham, Jr.*, and *Francis X. O'Donnell, Jr.*, special attorneys), for the defendant.

Before OLIVER and WALKER, Judges

WALKER, Judge: The merchandise involved in this suit against the United States consists of imported black Belgian marble on which the collector of customs assessed duty at the rate of 1 dollar per cubic foot under the provision in paragraph 232 (a) of the Tariff Act of 1930 which reads as follows:

* * *   marble, breccia, and onyx, sawed or dressed, over two inches in thickness   * * *.

Plaintiff claims the marble is neither sawed nor dressed and is properly dutiable at only 65 cents per cubic foot under the provision in the same paragraph which reads:

Marble, breccia, and onyx, in block, rough or squared only   * * *.

At the trial plaintiff established that marble such as that involved is found in the quarry in layers of comparatively uniform thickness between layers of a foreign substance such as slate. In quarrying, the entire mass of marble is removed, the foreign substances or waste taken away, and the large mass is cut into smaller blocks which are then squared. In cutting the smaller blocks the aim is to get as many merchantable blocks out of the large mass of marble as possible, and the squaring of the blocks consists of shaping them into comparatively rectangular blocks for shipment, irregularities or protuberances or unevennesses being cut off by means of a hammer and a pitching tool, or point.

Plaintiff's witness Weiss, who identified himself as the owner of the importing company, testified that the marble in issue had not been ordered according to size, shape, or specifications and consisted only of squared blocks of marble of uniform thickness but in different lengths and widths. The imported marble, he said, was not processed in any way by him but was shipped to Colonna & Co. of the Bronx, New York City, and plaintiff's witness Freund, vice president of the latter company, corroborated Mr. Weiss' testimony as to the condition of the marble when received by his company, i. e., as rough squared blocks.

On the question of whether the merchandise consisted of "sawed" marble we are satisfied that plaintiff has established that the merchandise had not in fact been sawed prior to importation, and it is

also noted that the appraiser's return describes the merchandise as "hammer-dressed" with advisory classification as "marble, dressed."

Qualified as a witness on the subject of the commercial meaning of the term "dressed" as applied to marble, witness Freund testified that at and prior to the passage of the Tariff Act of 1930 there existed a difference between the common meaning of the term and its meaning in the trade and commerce of the United States as follows:

Dressed in the common meaning does imply the shaping of any mass of stone, whereas the trade meaning of the word "dressed" means practically the same thing as "sawed." It has been processed to satisfy a certain specification, as to thickness perhaps, or sizes of pieces, or of finish, the type of finish, the appearance that the marble shall take.

and that such commercial meaning was definite, uniform, and general. The common meaning of the term as given by the witness accords with the court's understanding thereof, which is expressed in Funk & Wagnalls New Standard Dictionary under the definition of the transitive verb "to dress" as—

To reduce to proper shape for use; square or cut down, as stones.or timber.

Under the foregoing common meaning of the term a squared block of marble might be considered dressed, but a reading of the tariff provisions here in question indicates that Congress did not intend to include marble which had been squared only within the category of dressed marble for the provision under which plaintiff claims covers "marble  *  *  *  in block, rough or squared only."

Questioned as to why he believed the marble in issue had not been sawed or dressed as his company received it, witness Freund stated:

The blocks showed the upper and lower faces, that is, the parallel faces showed the natural unevenness that occurs in rough quarried block when separation has been made from between the slatey ledges. As I understand it, there is a distinct unevenness of surface. The other four sides of the block were merely squared to straight lines, to form a rectangular shaped piece of marble.

This testimony of plaintiff's witness Freund contrasts with the testimony given by the United States Examiner of Merchandise who examined and passed upon the merchandise. His description of it as he viewed it on the premises of Colonna & Co. is as follows:

It consisted of what I would call slabs of a uniform thickness, of approximately 8¼ inches, and it was hammered on all six sides, including the top and bottom faces.  *  *  *  And it was trued up so that each face was a true right angle to all of the adjoining faces. In other words, a perfectly rectilinear form. The thickness was uniform, approximately 8¼ inches, but the other dimensions were not uniform, that is, the length and breadth were not uniform; approximately the dimensions shown on the invoice. All of the six faces were trued up quite true with the hammer. I would like to say that in my examination of marble since 1925 and 1924, I have never seen any block which was trued up as truly as these blocks were. All previous ones always had outages or bevels, or defects, pieces broken off, or corners broken off, or some other defects. These blocks had none of those things. They were all of complete rectilinear form, and of uniform thickness.

On cross-examination the fact that the examiner did not examine the merchandise until after importation when the marble was in the yards of Colonna & Co. was brought out, the inference being suggested that by that time dressing operations may have been performed on the marble. However, witness Freund testified that all that was done to the marble by Colonna & Co. was to saw it by a gang-saw, and since there is no question but that as imported and as the examiner viewed it the merchandise had not been sawn we do not think the examiner's direct testimony was impaired by that admission.

A careful review of the entire record is convincing that plaintiff, by a preponderance in weight of competent evidence, has established that however well trued up the blocks of marble in issue appeared to be, they were nevertheless not sawed or dressed, from which it follows that the collector's classification was erroneous, and that as imported the merchandise in issue consisted of marble in block having had no further processing than squaring.

The protest is therefore sustained and judgment will issue accordingly.